UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PRECISION DRILLING COMPANY, L.P., § § § Plaintiff. § § VS. § CRUM & FORSTER INSURANCE § COMPANY, ET AL., § § Defendants. § | CIVIL ACTION NO. 4:21-cv-00570 |

## ORDER AND OPINION

Before me is Defendants' Amended Joint Motion to Dismiss. Dkt. 27. After considering the motion, the response, the reply, and the applicable law, the motion is **DENIED**.

## BACKGROUND

Allegiant Energy Services, LLC ("Allegiant") provided oil well drilling services to XTO Energy, Inc. ("XTO") pursuant to a Master Service Agreement ("MSA") executed in July 2017. Important to this case, the MSA required Allegiant to (i) purchase workers' compensation insurance with certain limits; and (ii) secure a waiver of the right of subrogation from its insurance carrier.

On December 19, 2019, Jose Juarez ("Juarez"), an Allegiant employee, was allegedly injured while performing work under the MSA on a wellsite in Eddy County, New Mexico. Precision Drilling Company, L.P. ("Precision") provided a drilling rig and associated drilling services at the New Mexico wellsite.

On December 30, 2019, Allegiant's insurance carrier, Crum & Forster Insurance Company ("Crum & Forster"), made a subrogation demand against Precision for workers' compensation benefits paid to Juarez.

After receiving the subrogation demand, Precision filed this lawsuit against Allegiant and Crum & Forster. The First Amended Complaint seeks two separate

declaratory judgments: (1) that Allegiant breached the MSA and owes Precision defense and indemnity against the subrogation claim asserted by Crum & Forster; and (2) that Crum & Forster's subrogation claim has been waived in accordance with the express terms of the MSA. Precision recently dismissed Allegiant from the lawsuit, but the declaratory judgment claim against Crum & Forster remains outstanding.

Crum & Forster has moved to dismiss the declaratory judgment claim against it under Federal Rule of Civil Procedure 12(b)(6), arguing that declaratory judgment is improper as Precision's claims for relief sound in tort. Even if dismissal is inappropriate, Crum & Forster takes the position that I should decline to exercise jurisdiction over this declaratory judgment action.

## LEGAL STANDARD

Rule 12(b)(6) allows for the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion, I must "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* at 336–37 (cleaned up). Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

## ANALYSIS

A.  **PRECISION PROPERLY SEEKS A DECLARATION RELATING TO THE PARTIES' RIGHTS UNDER A CONTRACT**

The Declaratory Judgment Act "authorizes the federal courts to 'declare the rights and other legal relations of any interested party seeking such declaration.'" *Val-Com Acquisitions Tr. v. Chase Home Fin., L.L.C.*, 428 F. App'x 364, 365 (5th Cir. 2011) (quoting 28 U.S.C. § 2201(a)). "The purpose of the Declaratory Judgment Act is to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty." *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949).

The parties readily agree that, as a general rule, a prospective tort defendant may not obtain a declaration of nonliability for the alleged tort. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 196 n.2 (5th Cir. 1991) ("It is not one of the purposes of the declaratory judgment acts to enable a prospective negligence action defendant to obtain a declaration of non-liability." (cleaned up)). "The principal justification for this rule is that it would be a perversion of the Declaratory Judgment Act to compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the apparent tortfeasor." *Certain Underwriters at Lloyd's London v. A & D Interests, Inc.*, 197 F. Supp. 2d 741, 750 (S.D. Tex. 2002).

Against this legal backdrop, Crum & Forster argues that Precision, through this declaratory judgment suit, is improperly "seeking to obtain an adjudication that it is not liable to Crum & Forster for any tort that it may have committed against Mr. Juarez." Dkt. 27 at 4. In response, Precision contends that Crum & Forster completely misconstrues the relief Precision seeks in this lawsuit.

> Precision is not seeking a declaration as to prospective tort liability. The purpose of this lawsuit is for this Court to declare—*irrespective* of any potential or even alleged tort liability—that [Crum & Forster] has no basis on which to seek subrogation from Precision. [Crum & Forster's] right to pursue subrogation or its waiver thereof is purely a matter of contract. Indeed, this whole case turns solely on the

3

construction and application of the MSA and the relevant insurance policy.

Dkt. 37 at 4.

I agree with Precision. This is not a case, like those cited by Crum & Forster, in which a party inappropriately seeks to resolve a tort claim via a declaratory judgment action. *See Am. Eurocopter LLC v. AIG Aviation, Inc.*, No. 4:09-CV-137-Y, 2009 WL 10705171, at *2–4 (N.D. Tex. June 19, 2009) (dismissing declaratory judgment action when plaintiff sought a declaration that it was not liable in tort); *Great-W. Life & Annuity Co. v. Petro Stopping Ctrs., L.P.*, No. CIV.A. 3:01CV1847G, 2001 WL 1636413, at *4–6 (N.D. Tex. Dec. 18, 2001) (same). Nothing at issue in this declaratory judgment lawsuit remotely addresses the underlying question of whether Precision is liable in tort for the injuries Juarez suffered as a result of the December 2019 workplace incident. Here, Precision simply argues that the MSA contains a contractual waiver that bars any subrogation action against it. This is exactly the type of situation in which a declaratory judgment is particularly appropriate. *See Republic Servs., Inc. v. Tex. Ecological Servs., Inc.*, 118 F. Supp. 2d 775, 777 (S.D. Tex. 2000) ("A declaratory judgment action is a perfectly appropriate method for determining rights under a contract."). Additionally, allowing this declaratory judgment matter to proceed furthers the Declaratory Judgment Act's goal of "allow[ing] potential defendants to resolve a dispute without waiting to be sued." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 397 (5th Cir. 2003). Accordingly, Crum & Forster's request to dismiss this case under the "prospective-tort-defendant rule" is denied.

## B. THE *TREJO* FACTORS

Having determined that dismissal based upon the "prospective-tort-defendant rule" is inappropriate, I now turn to Crum & Forster's contention that I should, nevertheless, decline to exercise jurisdiction over this declaratory judgment complaint.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). *See also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983) (noting that the Declaratory Judgment Act bestows "a choice, not a command" on a district court (quotation omitted)). Although "the district court's discretion is broad, it is not unfettered." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). Dismissing a declaratory judgment action based on nothing but a "whim or personal disinclination" would undoubtedly be an abuse of the district court's broad discretion. *Rowan Cos. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989) (quotation omitted).

In deciding whether to abstain from exercising jurisdiction in a declaratory judgment action, a district court must consider: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co.*, 343 F.3d at 387. The first two prongs are clearly satisfied in this case. Precision presents a justiciable claim, and the district court has the authority to decide the declaratory judgment suit. The only remaining consideration is the third prong—whether I should accept or decline jurisdiction over the declaratory judgment action. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.

The Fifth Circuit has identified seven nonexclusive factors that should guide a district court considering whether to decide or dismiss a declaratory judgment action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
>
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
>
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
>
> (5) whether the federal court is a convenient forum for the parties and witnesses;
>
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
>
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*See St. Paul Ins. Co. v Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994). These nonexclusive *Trejo* factors ensure district courts considering whether to exercise jurisdiction over a declaratory judgment suit adhere to three fundamental principles of our justice system: federalism, fairness, and efficiency. *See Sherwin-Williams Co.*, 343 F.3d at 390–91.

The first *Trejo* factor asks whether there is a pending state lawsuit in which all of the matters in controversy may be fully litigated. At this time, there is no state court action pending that could determine whether Crum & Forster's subrogation rights have been waived by the express terms of the MSA. Thus, if I decided to abstain from hearing this case, Precision would be left with no available avenue to resolve whether the MSA waived Crum & Forster's subrogation rights. Not surprisingly, the lack of a parallel state court proceeding is a significant factor that weighs heavily in favor of allowing the federal declaratory judgment action to

6

proceed. *See id.* at 394 ("The absence of any pending related state litigation strengthens the argument against dismissal of the federal declaratory judgment action.").

The next three *Trejo* factors—whether Precision filed suit in anticipation of a lawsuit filed by Crum & Forster, whether Precision engaged in forum shopping in bringing the suit, and whether possible inequities in allowing Precision to gain precedence in time or to change forums exist—"analyze whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds." *Id.* at 391. Crum & Forster avers that "filing of this case in the Southern District of Texas—Houston Division is improper and represents a blatant attempt to forum shop this case, hoping [that] this Court will apply Texas law rather than the applicable and controlling New Mexico law." Dkt. 27 at 6. I completely disagree. As an initial matter, I note that "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams Co.*, 343 F.3d at 391. To that end, there is nothing unseemly or offensive in Precision filing a declaratory judgment action in a federal court located in the same district in which it maintains its principal place of business. As far as Crum & Forster's assertion that Precision is forum shopping in an attempt to escape the application of New Mexico law, I simply observe that federal judges like myself are fully capable of conducting a choice-of-law analysis to determine which state's law applies. Rest assured, when the time comes, I will make sure the proper state law is given effect, regardless of the fact that these proceedings are taking place in a federal court located in Texas. Accordingly, *Trejo* factors two, three, and four support allowing this declaratory judgment case to move forward in federal court.

Factor five asks whether the federal court in which the declaratory judgment complaint has been filed is a convenient forum for the parties and witnesses. Crum & Forster does not bother to argue that the Houston Division of the Southern

District of Texas is an inconvenient locale. This is probably due, in large part, to both Precision and Crum & Forster having offices in the Bayou City from which they conduct business. Factor five thus favors retaining jurisdiction over this case.

Factor six requires me to determine whether retaining the lawsuit would serve the purposes of judicial economy. Given that there is no other pending lawsuit addressing the contractual issues at play in this case, I am hard-pressed to conclude that judicial economy would be served by sitting this one out on the sidelines. If anything, I am persuaded by Precision's argument that prompt resolution of the contractual waiver of subrogation issue in this lawsuit would actually serve judicial economy by quickly and efficiently resolving the issue once and for all.

The seventh factor—whether the federal court is being called on to construe a state judicial decree—is not at issue in this case. This factor is neutral.

All told, six of the *Trejo* factors favor retaining jurisdiction while one is neutral. Not one *Trejo* factor supports me declining to exercise jurisdiction. I am thus persuaded that the interests of justice favor exercising jurisdiction over this declaratory judgment proceeding.

## CONCLUSION

For the reasons set forth above, Defendants' Amended Joint Motion to Dismiss is **DENIED**.

SIGNED this 15th day of October 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE